Avalo Allison **FISHER**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15581.

United States Court of Appeals
Ninth Circuit.

April 9, 1958.

Rehearing Denied July 2, 1958.

R. Max Etter, Spokane, Wash., for appellant.

Charles P. Moriarty, Bruce J. Terris, Philip R. Monahan, Asst. U. S. Attys., Seattle, Wash., for appellee.

Before HEALY, FEE, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Avalo Allison Fisher appeals from a judgment of conviction on four counts of a six-count indictment charging violations of the False Statements Act, 18 U.S.C.A. § 1001. He contends here that the perjury corroboration rule should have been applied, that the counts of the indictment were duplicitous, and that improper cross-examination of a character witness resulted in irreparable prejudice.

In 1951, 1952, and 1953, Fisher was an executive board member of District 23, Local 93, International Woodworkers of America. In order for that organization to have access to the processes of the National Labor Relations Board, it was necessary for Fisher to annually file with the board a noncommunist affidavit.[1] He filed the required affidavits for each of those years.

An indictment consisting of six counts was thereafter returned against Fisher, charging him with having violated the False Statements Act, in making and filing these affidavits. In count I, he was charged with having falsely attested in his 1951 affidavit that he was not, as of the date of the affidavit, a "member" of the Communist party. Count II charged that he falsely attested in the same affidavit that he was not "affiliated" with the party. Counts III and IV made similar charges with regard to the 1952 affidavit, and counts V and VI made the same charges with respect to the 1953 affidavit.

Following a jury trial, Fisher was acquitted on counts V and VI, and found guilty on counts I to IV. A judgment was entered accordingly, and he was sentenced to five years imprisonment on each of the four counts the terms to run concurrently. Fisher appealed. This court set the judgment aside and granted a new trial, because of errors relating to the exclusion of evidence and instructions to the jury. Fisher v. United States, 9 Cir., 231 F.2d 99.

Fisher was thereafter retried on counts I to IV. On March 21, 1957, he was again convicted on these counts and was once more sentenced to five years imprisonment on each count, the terms to run concurrently. The present appeal is from this second conviction.

■ The first question which appellant presents is whether the perjury corroboration rule applies to this case involving the False Statements Act.[2] This rule bars a conviction for perjury on the uncorroborated testimony of one witness.[3]

Contending that the perjury corroboration rule should have been applied, appellant argues that the trial court erred in refusing to give his requested instruction on the matter. He also urges that the evidence was not of the kind required by the perjury rule, and is therefore insufficient to support the verdict.

This precise question was presented and considered on the previous appeal. We there said, 231 F.2d at page 106:

"The question is a close one, but the reasons behind the perjury rule do not seem applicable. The trial court did not err." [4]

1. Section 9(h) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 159(h). This section provides that such affidavit must state that the affiant " * * * is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods."

2. This act reads as follows:
   "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

3. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495.

4. The premise of this ruling is that charges of "perjury," brought under 18 U.S.C.A. § 1621, and not charges of false statements otherwise proscribed by law, are within the perjury rule. Section 1621 reads in part:
   "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written

Appellant acknowledges that the question was determined adversely to him on the prior appeal. He urges us, however, to reconsider the issue at this time. In this connection, our attention is called to the more recent case of Gold v. United States, 99 U.S.App.D.C. 136, 237 F.2d 764, involving a similar prosecution.

In the Gold case, an En Banc order was entered affirming a conviction by an equally divided court, and reserving for each judge the right to file a "statement of his vote and his reasons." Circuit Judge Bazelon was the only judge of the court to file such a statement. It was his view that a prosecution for "false statement" under § 1001 is virtually identical with one for "perjury," under § 1621, and that the same rule should therefore be applied in prosecutions under either section.[5]

The same reasons and considerations which are discussed in Judge Bazelon's well-documented statement were advanced in this court on the prior appeal. This is likewise true, in substantial respect, with reference to all of appellant's arguments on the point presented on this second appeal. We therefore do not feel warranted in departing from our former ruling.[6]

The second question which appellant presents is whether the two counts with regard to each affidavit are prejudicially duplicitous of each other. The first count directed to a particular affidavit charges falsity with respect to the denial of *membership* in the Communist party. The second count directed to a particular affidavit charges falsity with respect to the denial of *affiliation* with the party.

The paired counts are duplicitous of each other, appellant argues, since a person cannot conceivably be a "member" of an organization, and at the same time be "affiliated" with it. Because of this, it is contended, the trial court erred in denying appellant's motion to require an election of counts, and in failing to give a requested instruction on the point.

Without explicitly ruling that the counts were duplicitous, we said, in our prior opinion (231 F.2d at page 103):

"Doubt should be resolved against turning a single transaction into a multiple offense."

But this court then went on to say:

"However, appellant was only sentenced to five years on each count to run concurrently. The attack on splitting the cause of action would leave at least one good count for each of the three years. This alone does not justify reversal. See Kiyoshi Hirabayashi v. United States, 1943, 320 U.S. 81, 85, 105, 63 S.Ct. 1375, 87 L.Ed. 1774; Pinkerton v. United States, 1946, 328 U.S. 640, 641–642 note 1, 66 S.Ct. 1180, 90 L.Ed. 1489. * * * "

The sentences imposed after the retrial are identical with those imposed after the first trial—five years imprisonment on each count, the terms to run concurrently. It follows that, for the reasons stated in our earlier opinion, the failure at the second trial to require an election of counts, or to give the request-

---

testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury * * *."

5. There is nothing to indicate that any of the judges who voted for reversal in the Gold case, other than Judge Bazelon, shared his view. Of course, none of the four judges who voted for affirmance held that view. The affirmance of the judgment in the Gold case therefore actually amounts to a court holding that the perjury rule should not be applied in such prosecutions. Gold v. United States was reversed on other grounds. 352 U.S. 985, 77 S.Ct. 378, 1 L.Ed.2d 360. Since our decision in the first Fisher appeal, a conclusion similar to ours was reached in United States v. Killian, 7 Cir., 246 F.2d 77, 82, rehearing granted and cause remanded on other grounds 246 F.2d 82.

6. See Marron v. United States, 9 Cir., 18 F.2d 218, affirmed 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231.

ed instruction, was not prejudicial error.

■ The final question which appellant here submits has to do with the concededly improper cross-examination of one of his character witnesses.

Appellant's main character witness, Murle C. Hitchcock, was one of three members of a partnership which then employed appellant. On cross-examination, it was developed that when Fisher approached Hitchcock, about fifteen days before the first trial, and asked him to testify as a character witness, Hitchcock was with A. W. Morgenthaler, one of his partners. The cross-examination further disclosed that, at that time, Fisher also asked Morgenthaler to provide character testimony. The following cross-examination then occurred:

"* * * Q. · Do you recall what happened when he asked Mr. Morgenthaler to testify for him? A. Mr. Morgenthaler has a very bad heart condition and he thought it might upset him.

"Q. Do you recall that when he asked Mr. Morgenthaler to testify for him, that Mr. Morgenthaler said that, 'If you will look me in the eye and tell me you were not a member of the Communist Party, I will come down there'? A. No, sir.

"Q. You were not present when that occurred? A. No, sir."

Counsel for appellant then moved that the quoted cross-examination be stricken "unless counsel is prepared to call Mr. Morgenthaler down here for purposes of impeachment." Counsel for the government stated that he would call Morgenthaler. The court then told the jury that the testimony concerning the statement made by Morgenthaler might be stricken if Morgenthaler was not produced. The jury was instructed that, if this evidence was ultimately stricken, they were to give no consideration to it whatsoever.

During a jury recess which followed, counsel for appellant added some further objections to the cross-examination in question. During the colloquy which followed, the court ruled that the questioned testimony should be stricken as improper cross-examination. Counsel for appellant then suggested that the other objections should be disregarded, and that the jury should be told to disregard the discussion concerning this cross-examination, which occurred in their presence.

This course was agreed upon by both counsel. Accordingly, when the jury returned, the trial court made the statement to the jury which is quoted in the margin.[7] During final instructions, the jury was also told to disregard any evidence or questioning which might have been ordered stricken.

Following conviction, appellant moved for arrest of judgment, judgment of acquittal, and a new trial. As one ground for the granting of these motions, it was stated that appellant was substantially prejudiced and deprived of a fair trial by reason of the cross-examination in question. In support of this ground, the affidavit of Morgenthaler was submitted, in which he categorically denied having

---

7. "You will recall when Mr. Hitchcock was on the stand, the last witness, the question was asked on cross examination with respect to a statement allegedly made by Mr. Morgenthaler in the presence of Mr. Hitchcock. The Court has concluded that that question was not a proper question on cross examination and, therefore, it should not have been asked and the question as well as the answer will be stricken and you will disregard it entirely.

"In view of the Court's ruling there would be no occasion to—it would not be permissible to—call Mr. Morgenthaler even though he might be available. So, whether he is or not is not material in view of the Court's ruling. Therefore, you will disregard the answer and likewise the question with respect to that statement entirely and put it out of your mind and likewise you will disregard entirely the colloquy and the comments between Counsel as respecting that testimony as it occurred in the court room and erase it from your mind."

made the remark attributed to him in the cross-examination.

The trial attorney for the government filed a counteraffidavit indicating that the cross-examination involving Morgenthaler had been based upon a Federal Bureau of Investigation report which had been misinterpreted by affiant. In this affidavit, it was conceded that the court's ruling was correct, and that the question should not have been asked.

The motions were denied by the trial court. Appellant here argues that the cross-examination in question was so improper and prejudicial that it was error to deny all of these motions.

The cross-examination was improper, as everyone concedes. The question presented here is whether it was so prejudicial that it was an abuse of discretion to deny the motion for a new trial or one of the other post-verdict motions.

A trial judge is in a better position than is this court to measure the prejudicial effect of improper questioning. In this case, the trial court was apparently of the view that any prejudicial effect such questioning might otherwise have would be sufficiently counteracted by the three cautionary instructions which were given. It seems to us that these instructions very fairly and adequately dealt with the situation which was presented.

At the time of the trial, counsel for appellant was seemingly of the view that the proper course was followed. It was he who suggested the kind of cautionary instruction which should be given, and added, "* * * that is a fair way to state it." The court was entitled to assume that counsel for appellant meant that the cautionary instruction was fair to his client, and was adequate to overcome any possible prejudice. No motion for a mistrial was made.

Under these circumstances, we conclude that the trial court did not abuse its discretion in denying the motion for a new trial and the other post-verdict motions.

Affirmed.