**Warren R. NEELY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17564.**

United States Court of Appeal,
Ninth Circuit.

Feb. 26, 1962.

Certiorari Denied April 30, 1962.

See 82 S.Ct. 1030.

68

Lewis, Roca, Scoville, Beauchamp & Linton, John P. Frank, Phoenix, Ariz., for appellant.

C. A. Muecke, U. S. Atty., Sheldon Green, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before HAMLEY, HAMLIN and BROWNING, Circuit Judges.

HAMLIN, Circuit Judge.

Appellant, Warren R. Neely, appeals to this court from a conviction by a jury on each of two counts of an indictment charging him with violations of 18 U.S. C.A. § 1001.[1] The court imposed the same sentence upon each count and ordered that the sentences run concurrently. Jurisdiction is in this court pursuant to 28 U.S.C.A. § 1291.

When the evidence is viewed in the light most favorable to the government,[2]

1. Title 18 U.S.C.A. § 1001 reads:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisonsed not more than five years, or both."

2. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

it shows the following facts. On December 14, 1954, appellant leased 1280 acres of land near Chandler, Arizona, for a term of three years at a rental of $55,000 per year. The lease contained an option in favor of appellant to purchase the property which could be exercised between November 1, 1957, and December 15, 1957, for the sum of $165,000. In his 1955 tax return appellant claimed the sum of $55,000 as a business expense deduction upon his income. In 1957, before Neely had attempted to exercise the option in the lease, Internal Revenue Agent Albert was assigned to review Neely's tax return for 1955. He met Neely on July 17, 1957, in the office of and in the presence of one Campbell who was Neely's accountant. Albert told Neely that the main matter under discussion was the rental deduction of $55,000 taken by Neely. Albert testified that he asked Neely if the lease contained an option to purchase and that Neely answered that it did not. Albert testified that he then said " 'Good' because if it had contained an option to purchase, then the lease might be considered as a purchase agreement, which in that case the rental deduction of $55,000 would not be allowed, but would be considered as a part payment of the purchase price." Neely assured Albert that there was no option to purchase clause in the lease. Albert told Neely that it would be necessary to obtain a copy of the lease agreement in order to substantiate his statement and in order that Albert could attach the copy to the body of his report. In that way the rental deduction could be allowed to Neely. Neely said that he would obtain a copy of the lease agreement. He then went to the attorney who had prepared the original lease and had the attorney prepare a new lease by copying all the original provisions except those which made reference to an option to purchase. In preparing this new document the attorney, at Neely's direction, made red marks around the provisions relating to the option to purchase in order to indicate what parts of the lease were to be deleted from the new "copy". The attorney testified that he suggested the omission of the notarized part of the lease since he didn't know any notary who would notarize the "copy" of the agreement made in 1957 which was antedated to 1954. A few weeks later Albert again met Neely in his accountant's office. Neely gave Albert a copy of the newly prepared lease agreement which contained no reference to the option to purchase. After looking it over Albert said to Neely, "There doesn't seem to be any indication of an option here, therefore, I can allow the rental deduction and close the case."

Count 1 of the indictment charged appellant with having given to the Internal Revenue Agent the lease agreement which omitted the provisions of the option to purchase, and charged that appellant did "wilfully and knowingly conceal and cover up, by a trick and scheme, a material fact in a matter within the jurisdiction of the Internal Revenue Service of the United States Treasury Department, in violation of 18 U.S.C.A. § 1001."

Count 2 of the indictment charged that the appellant did "wilfully and knowingly make a false and fraudulent statement and representation in a matter within the jurisdiction of the Internal Revenue Service of the United States Treasury Department, in that he orally stated to Nathan Albert, Internal Revenue Agent, that there was no option to purchase involved in said NEELY's lease * * * whereas, in truth and in fact * * * NEELY well knew, the lease agreement in effect at the time such oral statement was made contained an option to purchase."

Appellant first contends that the court erred in failing to grant the motion for acquittal because the Government had failed to sustain its burden of proof. In making this argument appellant points out that Albert testified that in the initial conversation he asked appellant if the lease contained an option to purchase and that appellant denied that it did, but that appellant testified that no such question was asked him and that the other

person present—his accountant—testified that he had no recollection of this occurrence. Appellant contends that the perjury rule requiring confirmation by two witnesses or corroboration in addition to one witness applies,[3] and that since Albert's testimony concerning his conversation with appellant is uncorroborated it is insufficient to support the charges made. It is admitted by appellant, however, that this court has held to the contrary on several occasions,[4] and that the Tenth Circuit has followed this circuit upon the same subject.[5] Relying on statements appearing in the dissenting opinion of the Tenth Circuit case,[6] the appellant urges us to reconsider our prior decisions on this point and to adopt a different view. This we decline to do. We adhere to our prior decisions and we hold that the perjury corroboration rule does not apply to prosecutions under 18 U.S.C.A. § 1001. Fisher v. United States, 254 F.2d 302, (9th Cir. 1958); De Casaus v. United States, 250 F.2d 150 (9th Cir. 1957); Fisher v. United States, 231 F.2d 99 (9th Cir. 1956); Todorow v. United States, 173 F.2d 439 (9th Cir. 1949). See also United States v. Killian, 246 F.2d 77 (7th Cir. 1957) and Travis v. United States, 269 F.2d 928 (10th Cir. 1959), rev'd on other grounds, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961).

■ In addition to his contention for the perjury corroboration rule the appellant argues that when a statement alleged to be in violation of section 1001 has not been made under oath and is proved only by the testimony of a single witness which testimony is controverted by the testimony of another witness there is insufficient proof of an offense under section 1001 since one witness' word is as good as another's. In other words the appellant argues that one oath (that of

agent Albert herein) against another contrary oath (that of appellant) is not sufficient to prove that the statement for which the appellant was indicted was made. We cannot agree. One witness' oath is not as good as another's if the jury disbelieves the one and believes the other.

In Marzani v. United States, 83 U.S. App.D.C. 78, 168 F.2d 133 (1948) affirmed by an equally divided court, 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431 (1948), the appellant contended that the predecessor statute of section 1001 did not apply to statements made at a private conference which were not required to be made, which were not made under oath or which were not reduced to writing. The testimony of the only two witnesses (one of whom was the defendant) was conflicting. The court said:

"It is true, as the appellant says, that the statements were not under oath and were not stenographically transcribed; that the interview was at appellant's request; [and] that there were only two participants in the conference * * *. However, it appears with equal clarity that Mr. Panuch was appellant's superior in office, that he had requested appellant's resignation, and that the purpose of the interview was to afford the appellant an opportunity to discuss the requested resignation and the charges upon which it was based. The pertinent statute does not limit the offense to formal statements, to written statements, or to statements under oath. It applies to 'any false or fraudulent statements or representations, * * * in any matter within the jurisdiction of any department or agency of the United States.' "[7]

---

3. Cf. Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945).

4. Fisher v. United States, 254 F.2d 302 (9th Cir. 1958); Fisher v. United States, 231 F.2d 99 (9th Cir. 1956); Todorow v. United States, 173 F.2d 439 (9th Cir. 1949).

5. Travis v. United States, 269 F.2d 928 (10th Cir. 1959), rev'd on other grounds, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961).

6. Id. 269 F.2d at 946.

7. 168 F.2d at 141–142.

Statements for which there can be convictions under section 1001 are not limited to those required to be made by law or regulation.[8] Since such voluntary statements made to government agents can be made under an infinite variety of circumstances and since many of these circumstances would undoubtedly include the making of false statements in the presence of only one person, there should be no prohibition against proof of the circumstances under which a false statement was made by the testimony of the person to whom the statement was made. That one person to whom a false statement is made can prove the making of the statement by his testimony clearly follows from the decisions which hold that the perjury corroboration rule does not apply to cases involving section 1001.[9] Furthermore, the individual witness' credibility is subject to the scrutiny of court and jury, and such testimony is not to be held insufficient to prove the fact merely because the defendant denies the truth of the testimony. Thus, we hold that the making of a false statement which is covered by section 1001 can be proved by the testimony of the person to whom the statement is made even though such testimony is uncorroborated by other witnesses and even though such testimony is contrary to that of the defendant.

Appellant next contends that the conviction under Count 1 of the indictment is against the weight of the evidence. There is no merit to this contention. Appellant argues that he was only asked to produce a copy of the lease and that nothing was said about a purchase option. He says that in light of this request he felt free to use a copy of the lease only. However, the request for the lease was made specifically for the purpose of substantiating the appellant's statement that the lease did not contain an option to purchase. Appellant went to his attorney to have a special "copy" of the lease drawn up, antedated and signed, which "copy" omitted all reference to the option to purchase. Moreover, the appellant admitted that he had the lease changed before supplying it to the agent in order, as he said, "to avoid a controversy with the Internal Revenue." The above facts and the record show that there was ample evidence to sustain the conviction on Count 1.

The next contention of the appellant is that the matters involved in each count of the indictment were not matters within the jurisdiction of the Internal Revenue Service.[10] First, he states that the agent in 1957 while investigating the appellant's 1955 tax return asked for a copy of the lease agreement "then in effect." He argues that the lease "then in effect" (in 1957) "was, jurisdictionally, no business of the agent", because the return for that year (1957) would not have been due until 1958. This argument is totally without merit. It overlooks, *inter alia*, that the tax return investigated was for the year 1955 and that the lease in question with its option to purchase was dated December 14, 1954, was for a three year term, and was "in effect" both in 1955 and 1957.

Secondly, appellant argues that because the Internal Revenue Code of 1954 authorizes agents to take testimony "under oath" the agent in this case had no jurisdiction (within the meaning of section 1001) to question the appellant while he was not under oath. The pertinent provisions of the Code are set forth in the margin.[11] We think that these

8. E. g., Knowles v. United States, 224 F. 2d 168 (10th Cir. 1955); Cohen v. United States, 201 F.2d 386 (9th Cir. 1953).

9. See note 4 supra.

10. See note 1 supra.

11. Title 26 U.S.C.A. § 7601(a):
"The Secretary or his delegate shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue dis-

sections gave ample authority to the Internal Revenue Agent to do what he did. While the agent was "authorized" to take statements under oath he was not required to do so.

■ Appellant next contends that the court erred in instructing the jury as follows:

"You are further charged that the word 'knowingly' means with knowledge and that wilfulness is an element of the offense charged and is necessary for the Government to prove beyond a reasonable doubt that the defendant wilfully and knowingly submitted a false statement or document. To prove this element it is not necessary that the Government prove that the defendant in fact had an evil intent. The word 'wilful' means no more than that the forbidden act is done deliberately and with knowledge."

Appellant admits that this exact instruction was approved in McBride v. United States, 225 F.2d 249 (5th Cir. 1955), but contends that "it conflicts with the better judgment even of that Circuit, and that it certainly conflicts with the rule in this Circuit" (relying on Abdul v. United States, 254 F.2d 292 (9th Cir. 1958)). We cannot agree.

The Fifth Circuit has reaffirmed McBride in Corcoran v. United States, 229 F.2d 295 (5th Cir.1956). In that case the appellant was charged with a violation of 18 U.S.C.A. § 1001. The district court refused appellant's request to instruct the jury that for an act to be wilfully committed (under section 1001)

"it must have been committed by the defendant with an evil intent, and with knowledge that it was unlawful, and with the specific intent on the part of the defendant to fraudulently conceal material facts in matters within the jurisdiction of the Veterans Administration."

The court stated:

"The requested charge insofar as it states that 'in order for an Act to be willfully committed * * * it must have been committed by the defendant with an evil intent' was inapplicable in a case such as we here consider for the reasons stated in our opinion in McBride v. United States * * *." [12]

The court pointed out that the district court had instructed the jury that " 'for an act to be "wilful," within the purview of Section 1001, the person doing the act must then have known what he was doing and deliberately did such act, conscious that what he was doing was unlawful' ". The court then stated that "[t]his charge was adequate and entirely

---

trict and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed."
Title 26 U.S.C.A. § 7602:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any books, papers, records, or the other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

12. 229 F.2d at 299.

proper, and in strict conformity with our holding in the McBride case." [13]

Furthermore, we do not believe that Abdul v. United States, 254 F.2d 292 (9th Cir.1958), relied upon by appellant, requires that in a prosecution under section 1001 the jury should be instructed that "wilfulness implies a bad faith and an evil motive." Abdul involved violations of the income tax laws, not violations of section 1001. In that case prosecutions for violation of tax statutes were distinguished from prosecutions under different statutes. The court stated:

"The meaning of the word 'wilfully' *as used in the tax statutes* has been considered in a number of cases and seems to have come to rest in this Circuit, as well as others, as meaning with respect to felonies, 'with a bad purpose or evil motive.' " [Emphasis added. Citations omitted.] [14]

But the court recognized that the word "wilfully" does not always mean the same thing. The court said:

"It is 'a word of many meanings, its constructions often being influenced by its context. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381. * * * ' " [15]

In Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), the Supreme Court expressed the same view as to its variety of meanings. The Court there stated:

"It ['wilfully'] may well mean something more as applied to nonpayment of a tax than when applied to failure to make a return. Mere voluntary and purposeful, as distinguished from accidental, omission to make a timely return might meet the test of willfulness. *But in view of our traditional aversion to imprisonment for debt,* we would not without the clearest manifestation of Con-

gressional intent assume that mere knowing and intentional default in payment of a tax where there had been no willful failure to disclose the liability is intended to constitute a criminal offense of any degree. *We would expect willfulness in such a case to include some element of evil motive* and want of justification in view of all the financial circumstances of the taxpayer." [Emphasis added.] [16]

We hold that in this prosecution under section 1001 use of the instruction of which the appellant complains was not error.

■ Appellant contends that the court erred in admitting into evidence exhibits 4 and 5. Exhibit 4 is a financial statement given by appellant to the Mesa Branch of the Valley National Bank which lists his assets and liabilities. Appellant contends that he was prejudiced thereby before the jury because the statement shows him to be "a financially successful man." This financial statement, however, contained an item listed as a personal property asset reading "Prepaid lease $55,000." At the trial the government was contending that the $55,000 which the appellant had claimed as a deduction for rental expense was really a part of the purchase price under the option to purchase; therefore, the government argues that it was not error to show that the appellant himself considered the $55,000 as an asset. We agree that there was no error. Exhibit 4 does not have a great deal of probative value, because it may well be proper accounting procedure to list a prepaid lease as a personal property asset whether or not there is an option to purchase. However, an objection that an item of evidence is subject to conflicting inferences goes to its weight rather than to its admissibility.[17] There was certainly no prejudice to the appellant.

13. Ibid.

14. 254 F.2d at 293.

15. Id. at 294.

16. 317 U.S. at 497–498, 63 S.Ct. at 367.

17. Cf. McCormick, Evidence § 152 (1954).

■ Exhibit 5 was a so-called "offering sheet" made by an officer of the Valley National Bank as a memorandum of the information given to the bank at an interview with the appellant who was applying for a loan. The exhibit contained a statement made by the bank officer after a conversation with appellant. This statement referred to the 1280 acres described in appellant's lease and option to purchase stating, "This was acquired on a lease purchase basis, the total consideration being $300,000 with $55,000 paid in advance and $55,000 payable on January 15, 1956 and 1957 and $45,000 on January 15, 1958." The bank officer had been called as a witness to testify to the conversation with appellant which formed the basis for the above statement. He was asked to refresh his recollection from the contents of the offering sheet which had been made in March, 1957. The banker testified that he had had a conversation with appellant in 1957 and that Neely had then told the bank that he had a lease on the real property in question which provided for a purchase option. When an objection to the admission of the memorandum was made by appellant the following proceedings took place.

"Q. Do you have the care, custody and control of this document as manager of the Mesa Branch of the Valley National Bank?

"A. Yes.

"Q. And was this statement here made in the ordinary course of business as a standard bookkeeping entry?

"A. It was made in the standard course of our credit files, yes.

"Q. And does this concern Warren R. Neely?

"A. Yes."

The document was then admitted in evidence over appellant's objection.

The Business Records Act, 28 U.S.C.A. § 1732, sets forth the business records exception to the rule against hearsay evidence as follows:

"(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

"All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

"The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

■ While appellant concedes in his brief that exhibit 5 "is the kind of entry which is capable of being 'a memorandum or record of any act, transaction, occurrence, or event'", he contends that it is not admissible as a business record. We do not agree. We believe that the excerpt of testimony set out above was sufficient foundation for the admission of exhibit 5 into evidence as a business record within the meaning of section 1732(a).

Appellant finally contends that exhibits 6, 7 and 8 were not admitted into evidence and should not have been allowed to go to the jury. Exhibit 6 was a photostat of a commission agreement between the owners of the property in question and the realtors who handled their deal with appellant. To this was attached, as Exhibit A, a photostat of the lease and option to purchase agreement dated July 20, 1954, between the owners and appellant.

Exhibit 7 was a photostat of the lease and option to purchase between the same parties dated December 14, 1954.[18]

Exhibit 8 was the original typewritten lease and option to purchase dated December 14, 1954, on which had been placed red lines around all references therein to the option to purchase.

Exhibits 6, 7 and 8 according to the reporter's transcript were marked for identification on the afternoon of March 29 during the testimony of Richard E. Johnson, the attorney who had prepared the lease and option agreements dated July 20, 1954, and the similar lease and option agreement dated December 14, 1954. Mr. Johnson testified that the appellant had signed the two lease and option to purchase agreements in his presence. Johnson further testified that in July, 1957, he had put the red marks on exhibit 8 at the direction of appellant "to eliminate the option to purchase portion of the agreement from the lease agreement" and that he had handed it to appellant to be typed.

On the following afternoon during the opening argument of the prosecution appellant's counsel brought to the attention of the court that the typed transcript did not contain any reference to exhibits 6, 7 and 8 having been admitted in evidence. Each of the exhibits, however, had attached to it the tab affixed by the clerk of the court showing that the exhibits had been "admitted and filed March 29, 1961." Counsel for the prosecution in reply stated,

"I specifically recall offering every single lease into evidence and furthermore it is marked by the court which is the best evidence of whether or not they are admitted.

THE COURT: That is what the court ordinarily says. * * * They are marked in evidence and the court will consider them."

After the jury had retired to deliberate, it requested that the exhibits be brought to the jury room. Appellant's counsel again contended that the transcript did not show that they had been admitted in evidence, although he admitted that the clerk had asked him previously whether the exhibits were in and that he had replied, "I guess they are, I think they are". The court then stated, "I will admit them now and then I will see whether that is the proper thing."

We can see no error in the action of the court in permitting these exhibits to go to the jury. Government counsel stated that he had a distinct recollection of their having been offered and admitted. They bore the stamp and signature of the clerk that they had been admitted. Appellant's counsel had replied to a question put to him by the clerk of the court that he believed that they were in evidence. In addition to all of the above, the court specifically admitted them just prior to the time they were given to the jury for inspection.

The court may in its discretion allow evidence to be admitted out of the ordinary order of proof where, for instance, its admission was overlooked by mistake or inadvertence.[19] Under the circumstances of this case we are unable to say that the trial court abused its discretion in admitting the items before they were sent to the jury. There can be no question that the lease and option to purchase agreement was admissible in its various forms. Moreover, we see no prejudice in the fact that the commission agreement betwen the seller or lessor and the realtors was attached to the lease agreement in exhibit 6.

An examination of the entire record discloses that there was substantial evidence to support appellant's conviction on each count of the indictment and that there was no prejudicial error.

Judgment affirmed.

18. The December 14, 1954, lease and option to purchase was in all important particulars the same as the lease and option dated July 20 1954, but it had been changed in some details not pertinent to this discussion.

19. See generally 6 Wigmore, Evidence §§ 1876–81 (3d ed. 1940).