**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Walter L. SCHMOKER, Defendant-Appellant.**

**No. 77–1739.**

United States Court of Appeals, Ninth Circuit.

Nov. 7, 1977.

Clarence A. Nelson, Las Vegas, Nev., for defendant-appellant.

Lawrence J. Semenza, U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and WONG,* District Judge.

WONG, District Judge:

On May 11, 1973, appellant was interviewed at the Internal Revenue Service (I.R.S.) office in Las Vegas pursuant to a routine audit of his 1971 tax return. At that interview, appellant presented a letter signed by a Charles Bradshaw as proof from his employer, Bankers Life and Casualty Co., that he had not been reimbursed for his travel expenses. Appellant further claimed a deduction for split commissions in the amount of $730. He was informed by the auditor that he would need a statement from those persons he split the commissions with as to the amounts they received.

Appellant returned to the I.R.S. office on December 3, 1973 and presented a letter from a Bill Champaign stating that he had received approximately $700 from appellant for a split commission. At that time, appellant also told the auditor that he received the Bradshaw letter from the Phoenix, Arizona, Branch Sales Manager.

On November 18, 1976, the Grand Jury issued an indictment charging defendant-appellant with violation of 18 U.S.C. § 1001 and 26 U.S.C. § 7206(1). A superseding indictment was filed on December 16, 1976. After a jury trial, the jury returned a verdict of guilty as to Count I (§ 1001) and not guilty as to Count II (§ 7260(1)), and a judgment of conviction was entered.

At trial, the Government introduced the testimony of Mr. Bjordahl, the District Manager of Bankers Life and Casualty Co. (the district including Arizona and Nevada).

In 1971, Mr. Bjordahl was not the District Manager of this region; however, he testified that it was not the practice of Bankers Life and Casualty Co. in Arizona to type in its own letterhead. He also testified that he did not know of any Charles Bradshaw with Bankers Life and Casualty Co., although he did know of a Charles Bradberry, who was a regional sales manager in Colorado. At the time in question, Charles Adams was the Branch Manager in Phoenix.

The Government also called a Wilfred Champagne, a client of appellant, who testified that he had on one occasion received $19 from appellant for referring several friends to him for insurance policies. He stated, however, that he never received $700 from appellant, did not prepare the letter, nor asked anyone to prepare the letter. There was evidence that there were only around three (3) persons with the name Champagne living in Las Vegas.

Jack Calvert, questioned documents examiner for the United States Treasury Department, Internal Revenue Service, testified with respect to tests that he had conducted on both letters. In his opinion, the letters were typed on the same machine. (Tr. p. 137.)

After trial, appellant filed a motion for judgment of acquittal, which was denied. On March 14, 1977, appellant was sentenced to a fine of $1,000, a suspended sentence, and three (3) years probation. On March 24, 1977, he filed this appeal. We affirm.

■■ Appellant argues that the Government failed to prove the elements of the offense charged in Count I. However, upon review of the record it appears that there was sufficient evidence for the jury to find beyond a reasonable doubt that the appellant had violated the statute. 18 U.S.C. § 1001 provides that

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willful-

* Honorable Dick Yin Wong, United States District Judge, District of Hawaii, sitting by designation.

ly falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

We have no occasion to decide whether the "Bradshaw" letter, standing along, would have supported the verdict. The "Champaign" letter supplied ample evidence to sustain the conviction based on making "false, fictitious, or fraudulent statements or representations" or making or using "any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry." The fact that the Government could not produce a "Bill Champaign" did not prevent the jury from inferring that no such person existed. In addition, appellant's argument that the statements he made were not material, as the Government had begun its own investigation, is without merit.

■ Appellant's second argument is that 18 U.S.C. § 1001 does not apply to statements made to Internal Revenue agents. This argument is groundless. *See Neely v. United States*, 300 F.2d 67 (9th Cir. 1962); *Brandow v. United States*, 268 F.2d 559 (9th Cir. 1959); *United States v. Bush*, 503 F.2d 813 (5th Cir. 1974), does not support appellant's contention that 18 U.S.C. § 1001 does not apply to statements made to Internal Revenue agents. *Bush* held that denials of criminal conduct made in the course of an Internal Revenue Service investigation of another taxpayer did not constitute conduct within the scope of § 1001. Appellant's conduct consisted of affirmatively tendering fictitious documents to an I.R.S. investigator to preserve his claimed tax deduc-

tions. That affirmative conduct is not within the *Bush* case.

■ The third argument advanced by appellant is that the letter from "Bill Champaign" should not have been admitted into evidence because he was not given Miranda warnings before he submitted it as proof that he had split commissions. There is no basis for this argument, since Miranda warnings only apply to custodial interrogations. *Miranda v. State of Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), cited by appellant, does not alter *Miranda*, since the defendant in that case was incarcerated at the time he was questioned by I.R.S. agents.

■ Appellant's fourth argument that the jury was confused by the instructions is apparently based on the fact that the jury acquitted him on Count II of the indictment. He does not challenge the instructions as being improper, and it appears that they were proper. In addition, there is no indication that the jury was confused by the instructions, and the evidence supports its verdict.

AFFIRMED.

HUFSTEDLER, Circuit Judge, concurring specially:

I concur in the result because it is compelled by authorities both in this Circuit and elsewhere that permit the Government to choose to prosecute a taxpayer who makes a false statement to an Internal Revenue agent for a felony, under the general false statements statute, 18 U.S.C. § 1001,[1] rather than for a misdemeanor, under 26 U.S.C. § 7207, a statute specifically directed to persons who make false statements to the Internal Revenue Service.[2] (*E. g., Nee-*

---

**1.** § 101 provides: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to

contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

**2.** § 7207, in pertinent part, provides: "Any person who willfully delivers or discloses to the . . . [IRS] any list, return, account, state-

ly v. United States (9th Cir. 1962) 300 F.2d 67; Brandow v. United States (9th Cir. 1959) 268 F.2d 559. See also United States v. Burnett (9th Cir. 1974) 505 F.2d 815, 816; United States v. Bettenhausen (10th Cir. 1974) 499 F.2d 1223, 1233–34, United States v. Heine (2d Cir. 1949) 149 F.2d 485, 487.)[3]

The prosecutor was alone in his lack of compassion for this petty offender. The jury acquitted Schmoker of the count framed under 26 U.S.C. § 7206(1) (knowingly subscribing a false document (his tax return) under penalty of perjury).[4] The court fined Schmoker $1,000 and placed him on probation (a sentence that is the equivalent of a misdemeanor penalty under § 7207). Perhaps there is some explanation for the prosecutor's insistence on his draconian course, but none appears in the record. The exercise of prosecutorial discretion in this case adds no luster to the concept of governmental fairness, but the court is forbidden to intervene when the choice of charges is legally committed to the prosecutor.

ment, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both."

**3.** Schmoker's reliance on United States v. Bush (5th Cir. 1974) 503 F.2d 813, and similar cases, is misplaced. Such cases as Bush and United States v. Bedore (9th Cir. 1972) 455 F.2d 1109, apply a limiting principle to Section 1001 to prevent its broad language from being used to punish a person who answers "no" when he is asked if he committed a crime. This "exculpatory 'no'" doctrine holds that prosecution un-

der § 1001 cannot be added to prosecution for the underlying substantive offense because Congress did not intend to add a felony conviction to compel potential defendants to confess guilt to federal investigators. The "exculpatory 'no'" doctrine is inapplicable to this case.

**4.** The district court recognized that the acquittal was not technically inconsistent with the conviction on the remaining counts, but that the jury was expressing its compassion rather than making accurate, hair-splitting distinctions.