**MARZANI v. UNITED STATES.**

No. 9595.

United States Court of Appeals.
District of Columbia.

Argued Nov. 18, 1947.

Decided Feb. 2, 1948.

Rehearing Denied April 22, 1948.

Writ of Certiorari Granted June 21, 1948.
See 68 S.Ct. 1531.

Mr. Arthur Garfield Hays, of New York City, of the Bar of the State of New York, pro hac vice, by special leave of Court, and Mr. Allan R. Rosenberg, of Washington, D. C., with whom Messrs. Charles E. Ford and Warren L. Sharfman, both of Washington, D. C., were on the brief, for appellant.

Mr. John M. Kelley, Jr., Special Asst. to the Atty. Gen., and Mr. Leo A. Roth, Attorney, Department of Justice, with whom Mr. George Morris Fay, United States Attorney, both of Washington, D. C., and Miss Rosalie M. Moynahan, Attorney, Department of Justice, were on the brief, for appellee. Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Mr. Belford V. Lawson, Jr., of Washington, D. C., filed a brief on behalf of the National Lawyers Guild as amicus curiae, urging reversal.

Mr. Joseph Forer, of Washington, D. C., filed a brief on behalf of the Civil Rights Congress as amicus curiae, urging reversal.

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellant Marzani was indicted, tried, convicted and sentenced for having made false and fraudulent statements in a matter within the jurisdiction of an agency of the United States Government in violation of Section 80 of Title 18 of the United States Code Annotated. From the judgment of the District Court he appealed.

Appellant's first point is that the first nine counts of the indictment were barred by the statute of limitations. Dates are the important facts in this connection. In 1940 and 1941 Marzani lived and worked in private pursuits in New York City. In February, 1942, he applied for a position in the Government service. On March 7, 1942, he was employed as a war service appointee, subject to a character and fitness examination. On July 29, 1942, in the course of that examination, he was interrogated under oath by a representative of the Federal Bureau of Investigation. On November 23, 1942, he was similarly examined by representatives of the Civil Service Commission. As a result of the latter inquiry, he was rated ineligible. He appealed, and on April 20, 1943, he was given a hearing before the Board of Appeals and Review of the Commission. That Board reversed the initial ruling and rated him eligible. He was employed in the Office of the Coordinator of Information and the Office of Strategic Services as a civilian from March, 1942, until November, 1943, and in the latter service in military status until September, 1945, when he was honorably discharged as a master sergeant, and then with the same organization in a civilian status again until November 15, 1946. During the latter period, his unit of O. S. S. was transferred to the State Department. Marzani was then Deputy Chief of the Presentation Division. On Novem-

ber 15, 1946, after some discussions with his superior, he resigned and entered private employment as a producer of films for labor unions. On December 20, 1946, he was notified that he had been discharged from the State Department in the interest of the United States.

Marzani was indicted January 17, 1947. The indictment was in eleven counts, the first nine of which related to statements made by him in the course of the F.B.I. and Civil Service Commission inquiries in 1942.

In general the statements alleged by the indictment to have been false were answers to questions whether Marzani had ever been a member of the Communist Party, ever attended meetings of that party, contributed services to that party, and similar inquiries. In the indictment and upon the trial, it was charged that his negative answers were false. The falsity was alleged to have been established by activities of the defendant in New York City in 1940 and 1941.

The ordinary period of limitations for these offenses is three years.[1] Unless the running of that period was suspended, in the manner to be discussed, the first nine counts of this indictment were barred. The question is whether the running of the ordinary limitation was suspended in this case.

Two statutes are involved. The first is that under which the indictment was laid, which is Section 80, Title 18, of the United States Code Annotated, in its present form an act of June 18, 1934,[2] with minor changes by an act of April 4, 1938,[3] Section 35 of the Criminal Code. For ease in discussion, we shall refer to the pertinent clause of this statute as the False Claims Act. That clause provides:

" * * *; or whoever shall knowingly and willfully * * * make * * * any false or fraudulent statements or representations, * * * in any matter within the jurisdiction of any department or agency of the United States * * * shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

The other statute is Section 590a of Title 18 of the United States Code Annotated, which is an act of August 24, 1942,[4] as amended July 1, 1944,[5] and October 3, 1944;[6] Section 19(b) of the Contract Settlement Act of 1944 and Section 28 of the Surplus Property Act of 1944. For ease in discussion we shall refer to this statute as the Suspension Act. In pertinent part it provides: "The running of any existing statute of limitations applicable to any offense against the laws of the United States (1) involving defrauding or attempts to defraud the United States or any agency thereof whether by conspiracy or not, * * * shall be suspended until three years after the termination of hostilities in the present war as proclaimed by the President or by a concurrent resolution of the two Houses of Congress."

The question before us is whether the Suspension Act applies to offenses under the False Claims Act.

We see no escape fom the conclusion impelled by two decisions of the Supreme Court, United States v. Noveck [7] (and its companion cases, United States v. McElvain [8] and United States v. Scharton [9]) and United States v. Gilliland.[10]

In United States v. Noveck, the question was whether a statute which read, "That in offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, * * * the period of limitation shall be six years",[11] applied to perjury in an income tax return. The indictment alleged that the perjury was for the "purpose of defrauding the United States". The Supreme Court held that the six-year statute did not apply, because defrauding the United States is not

---

[1] 45 Stat. 51 (1927), 18 U.S.C.A. § 582.
[2] 48 Stat. 996.
[3] 52 Stat. 197.
[4] 56 Stat. 747.
[5] 58 Stat. 667.
[6] 58 Stat. 781.
[7] 1926, 271 U.S. 201, 46 S.Ct. 476, 70 L.Ed. 904.

[8] 1926, 272 U.S. 633, 47 S.Ct. 219, 71 L.Ed. 451.
[9] 1932, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917.
[10] 1941, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598.
[11] 42 Stat. 220 (1921) 18 U.S.C.A. § 582.

an element of the crime of perjury. The language of that statute of limitations is the same as that of the Suspension statute here involved; in fact, that statute was the predecessor to this one.

In United States v. McElvain, supra, the Court held that the six-year statute of limitations involved in United States v. Noveck did not apply to a conspiracy to defraud the United States by making a false income tax return. In United States v. Scharton, supra, the indictment was for an attempt to evade taxes by falsely understating taxable income. The defendant pleaded the statute of limitations. The United States contended that attempts to obstruct or defeat the lawful functions of any department of the Government, if accompanied by dishonest methods, are attempts to defraud the United States. The Court held that the six-year limitation applicable to offenses involving the defrauding of the United States, was not applicable to the offense described in that indictment.[12]

The United States seems to agree with the foregoing view of the Noveck and its allied cases. It says that the Suspension Act "was modeled upon the proviso" in the 1921 Act; that the 1921 and 1926 provisos "are in all essential respects identical with" the present Suspension Act; and that "said cases were decided in accord with the principle first enunciated in United States v. Noveck, to wit, that in order to be affected by the suspension statute 'defrauding or an attempt to defraud' the United States must be *an ingredient* under the statute defining the offense."

In United States v. Gilliland, supra, the question was whether the False Claims Act was restricted to matters in which the Government has some financial or proprietary interest. The Court held that it was not. The conclusion was premised largely on the fact that by amendment in 1934 [13] Congress had eliminated from the statute as it had theretofore existed [14] the words "or for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States," and that the legislative history of the amending act showed that this omission was deliberate and intentional. Thus, the Court held that defrauding the United States in a pecuniary or financial sense is not a constituent ingredient of offenses under the False Claims Act.

■ It necessarily follows, in our view, that the Suspension Act does not apply to offenses under the False Claims Act. The Supreme Court has clearly said (1) that a statute identical in pertinent part with the Suspension Act does not apply to offenses of which defrauding the United States in a pecuniary way is not an essential ingredient; and (2) that such defrauding of the United States is not an essential ingredient of offenses under the False Claims statute. If perjury on an official document required to be filed under a federal statute, the making of false income tax returns and an attempt to evade taxes are not defrauding the United States within the meaning of a statute of limitations, we do not see how making a false statement in the course of an inquiry into one's qualifications for federal employment can be.

The contention of the Government is that the Gilliland case, supra, merely held that an intention to swindle or defraud the Government, resulting in property or pecuniary loss, is not an element of proof under the False Claims Act; and that that Act retained, after its amendment, "all its

[12] Other cases referred to in the briefs in this connection are Bailey v. United States, 9 Cir., 1926, 13 F.2d 325; Weinhandler v. United States, 2 Cir., 1927, 20 F.2d 359, certiorari denied 1927, 275 U.S. 554, 48 S.Ct. 116, 72 L.Ed. 423; and Falter v. United States, 2 Cir., 1928, 23 F.2d 420, certiorari denied 1928, 277 U.S. 590, 48 S.Ct. 528, 72 L.Ed. 1003. In the Bailey case, the court held that defrauding the United States was a statutory ingredient of the offense of uttering and publishing a forged indorsement to a Government check with intent to defraud the United States. In the Weinhandler case, the court held that fraud is an element of the crime of embezzlement, and that, therefore, the six-year limitation in the 1921 proviso applied. In the Falter case, the court held that a conspiracy to commit a civil fraud is a crime under the conspiracy statute.

[13] 48 Stat. 996.

[14] 40 Stat. 1015 (1918).

essential fraud characteristics", that "the conception of fraud against the United States formerly expressed in the statute" was retained by the 1934 amendment. It says that a false statement made in a matter within the jurisdiction of an agency of the United States *"necessarily* [italics in Government brief] involves a fraud". The gist of the Government's contention is stated thus: "However, where an offense violative of the second clause involves 'knowingly and wilfully' making 'false and fraudulent statements,' the statute (recognizing the intrinsically wilful and fraudulent element in the very nature of the acts proscribed) does not require the government to establish proof of (a) intent to defraud, or (b) pecuniary or property loss to the United States. Hence, the essential fraud elements continue as a constant in Section 80, although the accidental language has changed insofar as 'intent of cheating and swindling or defrauding' found in the Act of October 23, 1918, may have varied the form rather than the substance of the offense."

■ The difficulty with the foregoing contention is that it ignores the plain rulings in Noveck and kindred cases. Those cases involved false statements, under oath. The offenses tended to obstruct, by dishonest means, the operation of a department of the Government. The Court held that the Suspension Act (actually an identical predecessor) does not apply to such offenses. So that even if the False Claims Act does involve the sort of fraud the Government says it does, the Suspension Act does not apply; the rulings in the Noveck and similar cases related to precisely that same sort of fraud. Despite the vigor and skill with which the Government's contention is pressed upon us by its counsel, we can see no escape from that conclusion. It follows that we are of opinion that the first nine counts of this indictment were barred by the statute of limitations, and the defendant's motion that they be dismissed should have been granted.

Appellant's next point is that the admission of the evidence relating to the first nine counts was substantially prejudicial to defendant in respect to the last two counts, and that, therefore, the conviction upon those two counts must be set aside. The tenth and eleventh counts were that defendant had, on or about June 1, 1946, falsely represented to his superior in the State Department, in the course of an official inquiry into his fitness for retention in the Government service, that he had never been a member of the 'Communist Party and that he had never used the name or been known as Tony Whales. Counts I, V, VI and VIII charged that he made exactly the same false statements to the F.B.I. and the Civil Service Commission in 1942.

■ If the defendant had been on trial for only his two 1946 statements, the issue would have been the truth or falsity of those statements. Obviously, all the evidence relevant and material to that issue would have been admissible in such a trial. Note that these statements made by Marzani in 1946 were that he had *never* been a member of the Party or used the alias. Evidence that he had been a member and used the alias in 1940-41 was thus clearly admissible. That admissibility could not be nullified by the mere fact that he made the same statements in 1942. And we do not see that evidence that he had made the same statements in 1942 was prejudicial to him upon a trial as to the truth of the 1946 statements; in fact, it would appear to have been beneficial, in that it showed that he had consistently from a time close to the event maintained the same position.

Evidence was also introduced to show that Marzani had attended meetings of the Communist Party, contributed services to that Party, participated in its activities, and made speeches against conscription. In Counts II, III, IV, VII and IX, respectively, it was charged that in 1942 and 1943 he had falsely stated to the F.B.I. and the Civil Service Commission that he had never done any of those things. The evidence that he had done them was directed to those particular counts, although its admission was not limited to them. Appellant especially urges that this evidence, relating, so he says, to the barred counts, was prejudicial to him in respect to the two valid counts. But we think that the evidence as to these

several specific activities bore directly upon the charge that Marzani falsely said in 1946 that he had never been a member of the Communist Party. Evidence that he attended meetings of the Communist Party, contributed services to it, participated in many of its activities, and made speeches consistent with its policies was relevant, material, and indeed substantial evidence upon the disputed issue of membership in the Party. That he denied in 1942, as he did in 1946, that he had ever done those things does not seem to us prejudicial to him upon a trial of the issue whether he had or had not ever been a member of the Communist Party. Here again his undeviating consistency of position would seem to have been beneficial rather than prejudicial.

The sum of the foregoing is that we think that all of the evidence which was actually introduced at this trial, including the evidence of his 1940–41 activities, and the evidence that he made these same or similar statements consistently in 1942–43, would have been admissible in a trial limited to the last two counts of the indictment. Therefore, we can find no error in its actual admission here.

█ There remains, in connection with this phase of the case, the question whether the inclusion of the barred counts as issues upon the trial, and the submission of those nine counts to the jury, were substantially prejudicial to the defendant in a trial which could validly involve only the last two counts. It was error to permit the first nine counts to remain in the indictment and to go to the jury. The question is whether that error was prejudicial to the defendant's rights in his trial upon only the last two counts. The function of an appellate court under the applicable rule [15] and statute,[16] and the history and meaning of that rule and statute, have been too thoroughly and carefully stated recently by Mr. Justice Rutledge in the opinion in Kotteakos v. United States [17] to require elaboration. Two features of the case at bar

determine the answer here. The first feature is that which we have just found, i. e., that no evidence was improperly admitted by reason of the erroneous inclusion of the barred counts upon the trial. The second determinative feature of the case upon this point is that the statements alleged to have been false in the barred counts were the same as, or similar to, the statements involved in the two counts properly on trial. The truth or falsity of the statements was the only issue, since Marzani did not deny making them. That issue depended entirely upon activities alleged to have occurred in 1940–41. Therefore, the issue actually submitted to the jury was actually and in fact the same as it would have been if only the last two counts had been submitted. If they were false in 1946, they were false in 1942, and vice versa. Our view on this point is the same as the view we have expressed above upon the evidence. We cannot see how the fact that he was charged with making a false statement in 1942 could be prejudicial to him in a trial involving the sole issue whether that same statement, made again in 1946, was true or false. The trial court told the jury, "The simple issue here involved is whether or not the defendant knowingly, wilfully, and feloniously made false and fraudulent answers to the questions asked of him." Those answers were the same in 1946 as in 1942—indeed they were categorically asserted as true by defendant on the witness stand. The evidence as to truth or falsity was the same as to all as it was to the two made in 1946. We think that the fact that the Government charged that the 1942 statements were, like the 1946 statements, false, was not, under those circumstances, substantially prejudicial to defendant's rights upon the trial.

Appellant's next point is that the trial court erred in its instruction to the jury upon the subject of good character. Defendant introduced evidence of good character. The court said to the jury, in the course of its charge: "And, I might add at this point, that evidence of good char-

---

[15] Federal Rules of Criminal Procedure, rule 52(a), 18 U.S.C.A. following section 687.
[16] Sec. 269 of the Judicial Code, as amended, 40 Stat. 1181 (1919), 28 U.S. C.A. § 391.
[17] 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557.

acter, taken in conjunction with all the other evidence before you, might be sufficient to create in your minds a reasonable doubt."

This instruction followed almost precisely what we characterized, in Colbert v. United States,[18] as "the language in which the instruction should have been couched." Appellant says that the clause "where, without it, you may have been convinced of his guilt" should have been added. Perhaps the suggested clause would have made clearer that which was already clear, but it would have done no more than that. We cannot find error in its omission.

Appellant next contends that the trial court improperly excluded certain evidence relating to Negroes because of the presence of nine Negroes on the jury, such exclusion being in violation of defendant's constitutional right to a fair trial. Because of the unique nature of this contention and the seriousness of the error if appellant's version of the reason for the disputed rulings by the court be correct, we have carefully read all the various portions of the printed appendix surrounding the incidents mentioned, although appellant does not cite to us any specific place at which the court indicated such reasons for its rulings. Appellant's general contention is that the combination of circumstances that nine of the twelve jurors were Negroes, that the three prosecution witnesses testifying to the falsity of defendant's statements were Negroes, and that the defendant himself was active in causes and upon occasions in behalf of Negroes, "conditioned the Court's rulings on the admission and exclusion of evidence". It is difficult to follow the precise course of appellant's argument in this respect, but his general statements and the implications are such as to require examination of all that transpired. Appellant cites three examples. The first occurred when Marzani, on the witness stand, began to relate an incident concerning the beating of two Negroes by police in New York. The court called counsel to the bench and, adverting to a prior reference by Marzani to "leaks" by named officials of the State Department

and the F.B.I. to named newspaper people, which the court had interrupted and stricken, told counsel that he foresaw an attempt to lead up to a prejudicial statement. The court referred to the "outburst with reference to the FBI and State Department" repeatedly, and iterated its determination that the case go to the jury "without prejudicial bias, sympathy or hatred". The utmost that the court said was "Well, the prejudice has happened here, so far as this is concerned, but in the future if you find yourself in a situation like that, will you please approach the bench?" When the trial was resumed, counsel for the defendant said, "Your Honor, I do not see how I can ask it except to bring out the discussion", and the court said, "All right, sir." The examination then proceeded without interruption.

The second example cited was in the course of the cross-examination of the prosecution witness Drew. Appellant says that the cross-examination was improperly limited by the court. He says, "The Court's refusal to permit this whole line of inquiry was erroneous * * *." We do not find that the court refused to permit the whole line of inquiry. When counsel for appellant had asked a series of questions of Drew concerning the National Negro Congress, the court called counsel to the bench and asked the purpose of the line of inquiry. In an extended colloquy, the court ruled that it would permit questions to establish that the testimony of another prosecution witness, Harper, concerning his membership in the Communist Party, was not true, and questions concerning meetings attended by the witness and the defendant and concerning any occasion as to which there was testimony upon direct examination; but the court said that it would not permit "at this time, sir" a question which included what the court thought was an erroneous statement of previous testimony by the witness, or questions concerning meetings and activities of the National Negro Congress not participated in by defendant and not testified to upon direct, and a series of questions of which an example was, "In 1940 and 1941, whenever

---

18 1944, 79 U.S.App.D.C. 261, 146 F.2d 10, 11.

you heard a person speak against police brutality, did you consider that person a Communist?" We cannot find error in these rulings of the court. Full opportunity was given to explore the testimony given upon direct. The limitations were upon the testing of credibility by inquiring into matters not included in direct examination, and questions whether the witness "considered" certain persons Communists. We do not find in these rulings the basis which appellant sees behind them. So far as the record shows, the rulings would have been the same regardless of the racial composition of the jury. Appellant says that he sought to show that Drew was an *agent provocateur* in that he organized the National Negro Congress on the East Side. We do not find any undue restriction of cross-examination upon that subject. The witness was asked, and answered without objection or restriction, a series of questions upon it. He stated that he organized or helped to organize the East Side Council of the Congress, that the witness Harper helped him to organize it, and that he (the witness) solicited memberships in it. Full argument as to the witness's role was available to appellant upon that testimony. The witness's activities were collateral to the issue in this case. Only to the extent that they constituted misconduct which had a tendency to show his lack of honesty or truthfulness could he be cross-examined upon them, and the court, having permitted sufficient inquiry to establish the basic facts in this respect, could, in its discretion, control the extent to which the matter could be pursued.[19]

The third example cited by appellant under this point was in the course of the cross-examination of the prosecution witness Harper. Harper had testified that a meeting sponsored by the National Negro Congress had been held and that the defendant, under the name "Tony Whales", had spoken as a representative of the 'Communist Party. On cross-examination of Harper, counsel for defendant said, "I would like to have you list some of the purposes of the National Negro Congress; what its objects were." After the answer had proceeded somewhat, the court called counsel to the bench and after a colloquy announced that it would permit inquiry concerning the meeting but would not go into "the organization and desires and aims of this Congress." The court did not indicate that its reasons were those now assigned it by appellant; it said, "We are not concerned with that", obviously meaning that the subject matter was irrelevant to the issue in the case, which was the truth or falsity of defendant's statements that he had never been a member of the Communist Party or been known as Tony Whales. We find no error in the limitation imposed by the court upon the extent to which this line of cross-examination could be pursued.

The appellant next says that the court erred in permitting prosecution witnesses to use expressions such as "Communist Party", "Communist meetings" and "Communist activities", because they involved opinions as to what is a "Communist". We are given no citations to places in the record where objections were made to the use of such expressions. Moreover, the same objection might be made to the use of almost any word. " * * * there are few statements of fact that are not conclusions of fact."[20] Appellant also contends that it was error to permit the introduction in evidence of leaflets distributed at meetings attended by Marzani, at some of which he spoke. They were admitted to show the character of the party, the meetings and the activities with which the defendant was identified by presence or participation. We find no error in the rulings of the trial court upon these questions of evidence.

We have considered the entire evidence, both direct and cross, of the prosecution in this case as it is presented in the printed joint appendix, in order to ascertain the substance of that evidence and the

---

[19] Pullman v. Hall, 4 Cir., 1932, 55 F. 2d 139, 141, and authorities there cited; Simon v. United States, 4 Cir., 1941, 123 F.2d 80, 85, and cases there cited. See Ewing v. United States, 1942, 77 U.S. App.D.C. 14, 135 F.2d 633, certiorari denied 1943, 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145.

[20] 3 Wharton, Criminal Evidence 2149 (11th ed. 1935).

fairness of its presentation. It is almost entirely specific, describing meetings, speeches and identified acts of the defendant, and personal acquaintance with him as "Tony Whales". The defendant in his turn categorically denied the occurrence of many of these events, explained the nature of his participation in others, denied that he had ever known some of the prosecution witnesses, and denied that he had ever been known as Tony Whales. There was a sharp issue of truth presented. The judge's charge was a careful, uncolored presentation of the issue to the jury. On the whole record, we must conclude that the jury decided the issue of fact thus presented. With that function this court cannot interfere.

 The jury returned verdicts upon each of the counts. The court imposed sentence generally upon the verdict. Under the rule long since established [21] that "in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only", the judgment must be, and it is

Affirmed.

### On Petition for Rehearing

Upon his petition for rehearing, appellant stresses one point which was not raised upon his principal brief, was mentioned in his reply brief, and was not discussed by the court in its opinion. Appellant now states the point as follows:

"The issue is whether the statute can be constitutionally applied to a prosecution for statements not required to be made, not under oath, not stenographically transcribed, never reduced to writing, made at a private conference initiated wholly at appellant's request, which he was not required to attend, solely to ask the reasons of his superior in the government for a request which had been made for appellant's resignation, where the only two participants in the conference addressed each other throughout by their first names and discussed a wide variety of other topics, where no suitable notice was given by regulation

or otherwise of the consequences of knowingly and wilfully making any false or fraudulent statements, and where the statute provides criminal penalties for false and fraudulent statements made 'in any matter within the jurisdiction of any department or agency of the United States'."

Upon the trial there was a direct contradiction of evidence concerning the circumstances and content of the conversations which formed the bases of the last two counts of the indictment. A Mr. Panuch testified that he was Deputy Assistant Secretary for Administration; that about April 30, 1946, he directed his assistant to request Mr. Marzani's resignation from the State Department; that in the latter part of May Mr. Marzani came to his office and said that his resignation had been requested for security reasons and asked "what it was all about"; that he advised Mr. Marzani that the request was made pursuant to his authority; and that he thereupon advised Mr. Marzani of the various charges against him, including the charge that he was a Communist, a member of the Communist Party in 1940 and 1941, and operated under the alias of Tony Whales. The witness further testified that Mr. Marzani replied that there was nothing to the charges; that Mr. Marzani took the charges up one by one and said, among other things, "I am not and never was a member of the Communist Party" and "I was never known as Tony Whales." The witness testified to a long ensuing conversation with Mr. Marzani, saying, "That was a long conference. I think it took over two hours. You see, it was in the nature of an appeal from Fearing's [the witness's assistant] request. * * * It was in the nature of an appeal from Fearing's request for his resignation, and the man was appearing before me as Deputy Assistant Secretary, and he was entitled to have his day in court, and we just threshed the matter out thoroughly." Mr. Marzani, in his testimony on the stand, gave a somewhat different cast to the interview.

It is true, as the appellant says, that the statements were not under oath and were

---

[21] 1891, Claassen v. United States, 142 U.S. 140, 146, 12 S.Ct. 169, 35 L.Ed. 966, 968; 1936, Whitfield v. Ohio, 297 U.S. 431, 438, 56 S.Ct. 532, 80 L.Ed. 778.

not stenographically transcribed; that the interview was at appellant's request; that there were only two participants in the conference; that they addressed each other by their first names; and that they discussed a wide variety of topics. However, it appears with equal clarity that Mr. Panuch was appellant's superior in office, that he had requested appellant's resignation, and that the purpose of the interview was to afford the appellant an opportunity to discuss the requested resignation and the charges upon which it was based. The pertinent statute[1] does not limit the offense to formal statements, to written statements, or to statements under oath. It applies to "any false or fraudulent statements or representations, * * * in any matter within the jurisdiction of any department or agency of the United States". In United States v. Gilliland,[2] the Supreme Court observed: "The amendment indicated the congressional intent to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described. We see no reason why this apparent intention should be frustrated by construction."

We see nothing vague about the language "false or fraudulent statements or representations" nor any ambiguity in the language "in any matter within the jurisdiction of any department or agency of the United States" which would place in doubt the requirement that a government employee, discussing officially with his superior an official request for his resignation, must be truthful.

Appellant's petition for rehearing is denied.

---

[1] Sec. 35 of the Criminal Code, 48 Stat. 996 (1934), as amended, 52 Stat. 197 (1938), 18 U.S.C.A. § 80.

[2] 1941, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598.