UNITED STATES of America,
Plaintiff-Appellant,

v.

BROWNING, INC., Browning Arms
Company and John Val Browning,
Defendants-Appellees.

Nos. 76–1956, 76–1957 and 76–1958.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 26, 1978.

Decided March 14, 1978.

Rehearing Denied April 5, 1978.

**721**

David W. Harlan, Sp. Asst. U. S. Atty.,
St. Louis, Mo. (Ramon M. Child, U. S. Atty.,
Salt Lake City, Utah, and David M. Rosen,
Sp. Asst. U. S. Atty., St. Louis, Mo., on
brief), for plaintiff-appellant.

Donald B. Holbrook of Jones, Waldo, Hol-
brook & McDonough, Salt Lake City, Utah
(James S. Lowrie and Frederick P. McBrier
of Jones, Waldo, Holbrook & McDonough,
Salt Lake City, Utah; John J. Sheehy of
Rogers & Wells, New York City and Dennis
Donnelly of Bryan, Cave, McPheeters &
McRoberts, St. Louis, Mo., of counsel; on
brief), for defendants-appellees Browning,
Inc. and Browning Arms Co.

Edward P. Morgan of Welch & Morgan,
Washington, D. C. (Kevin T. Maroney of
Welch & Morgan, Washington, D. C.,
George N. Larsen, Salt Lake City, Utah, of
counsel; on brief), for defendant-appellee
John Val Browning.

Before McWilliams, DOYLE and LO-
GAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The judgment which we are asked to review and reverse in this case is one based upon the trial court's dismissal of an indictment charging Browning, Inc., Browning Arms Company and John Val Browning with carrying out a fraud on the government by persuading or influencing manufacturers in Belgium and Japan to misrepresent on invoices the sale prices of various firearms, thereby reducing the amount of import duties.

The original indictment was returned by a Federal Grand Jury in St. Louis. For reasons not here relevant, the case was transferred from the Eastern District of Missouri to the District of Utah. Extensive pretrial arguments and briefing resulted in the present dismissal.

Section 1505 is the pertinent statute, and particularly important is the meaning to be attributed to the term "in any proceeding pending":

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness in any proceeding pending before any department or agency of the United States, or in connection with any inquiry or investigation being had by either House, or any committee of either House, or any joint committee of the Congress; . . .

Count I states, in extensive detail, background information as to the relationship of Browning Arms Company and a Belgian manufacturing company, the seller of the weapons to Browning. It alleges that the scheme was originally entered into in 1965, and called for John Val Browning to persuade the FN [*] Company of Belgium to declare the invoice unit price of a certain rifle to be $24.95, notwithstanding that the actual price was more. Added compensation was given by Browning Arms Company to FN by means of side payments. Between 1965 and 1970, 57,000 rifles were sold with false selling prices and with an agent of Browning declaring that there existed no document or information showing a different price. The same allegations are stated as to another rifle, the so-called T–Bolt, T–2 .22 caliber rifle.

According to further allegations, the Customs Service conducted an investigation into the importation practices of the Browning Arms Company in the period 1970-75. Browning, during the investigation, counseled, advised and suggested that the Belgian corporation conceal the side payments and give misleading, incomplete and manufactured answers to inquiries of the United States Customs Service.

[*] Fabrique Nationale d'Arms de Guerre S.A., Liege, Belgium.

Count II differs only in that it involves differently described firearms and a Japanese manufacturer, but the identical actions and practices set forth in Count I are set forth in Count II.

The third count dealt with the introduction into United States commerce of imported rifles during 1971–72 by the use of false and fraudulent invoices, contrary to 18 U.S.C. § 542.[1]

The trial court dismissed the first two counts because, as it concluded, the Bureau of Customs investigation inquiry did not constitute a "proceeding" pending before a department or agency within the meaning of § 1505. An additional ground given by the trial court for the dismissal of the indictment was that the term "corruptly" coupled with the words "endeavors to influence, counsels, suggests and advises" did not define an offense, and, specifically, that § 1505 does not make it a crime to counsel, suggest and advise.

Count III was ruled to be duplicitous in that it alleged that there were 26 fraudulent importations evidenced by separate documents, all of which import transactions were set forth in a single count. This was determined to require dismissal.

The questions presented and which we consider are:

First, whether the customs investigation as to the accuracy of the price representations and the investigation pertaining to falsification of answers was within the scope of the term *"proceeding"* as the same is used in § 1505.

Second, whether the district court correctly ruled that § 1505 is not violated by a corrupt act such as that presented, namely to give advice or counsel to foreign manufacturers that they are to falsify their answers to questions of Customs officials of the United States.

Third, whether the trial court ruled correctly in concluding that Counts I and II were so unclear as to make it impossible to determine which defendants committed which act.

A fourth question pertains to the third count only—in the false statement charged pursuant to 18 U.S.C. § 542. It describes 26 different occasions taking place during 1971–72 in which false statements were employed contrary to § 542. The ruling of the trial court was that the duplicitousness of this count called for its total dismissal.

I.

## WAS THE CUSTOMS INVESTIGATION OR INQUIRY A "PROCEEDING" AS THAT TERM IS USED IN § 1505?

■ In support of the government's contention that it was a "proceeding" in fact as well as in law, the indictment outlines the extensive, complex and comprehensive procedures before the Bureau of Customs. A foreign producer sending goods into the United States must complete a "Special Customs Invoice", which states the true price and value of the goods. Also, the domestic importer must complete either a "Customs Consumption Entry" or a "Customs Warehouse Entry" before it removes the goods from the custody of the Customs Service. The domestic importers must certify that the Special Customs Invoice is accurate. The Customs Service must evaluate the goods so as to assess the proper duty to be imposed, and it uses the documents which are furnished to it, which purport to contain the price, in reaching its conclusion. This all precedes any criminal study or inquiry.

1. This section provides:

Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; . . . .

The indictment alleged that between December 1970, and August 1975, the District Director of Customs Service at St. Louis conducted an investigation into the practices of the Browning Arms Company and that the individual defendant Browning, as agent for the corporate defendants, counseled, advised and suggested that the two foreign companies, the Japanese company and the Belgian company, were to give false answers when questioned by Customs officers.

The government's theory is that the "proceeding" commenced when the importer submitted an Entry Form and the Customs Service started the process of evaluating the goods.

The thesis of the defendants, on the other hand, is that the meaning advocated by the government is far too broad. To so construe it would have the effect of making all of the acts of the Customs Service a "proceeding."

The question before us as to the present meaning of the term "proceeding" is not so plain on its face as to lend itself to determination from the statute itself. Therefore, the cases and available background sources must be looked to.

Some light was provided by Congress in its report dealing with the enactment of a clarifying section, now § 1510 of the same Chapter, 73. On that occasion Congress commented on § 1503 and § 1505 of the Chapter, stating that these sections "presently prohibit attempts to influence, intimidate, impede or injure a witness or juror in a judicial proceeding, a proceeding before a Federal agency, or an inquiry or investigation by either House of the Congress or a congressional committee." The Report continues with the statement that attempts to obstruct a criminal investigation or inquiry before a proceeding has been initiated are not within the contemplation of the mentioned sections. Stated differently, Congress said it was enacting § 1510 so as to supplement § 1503 to cover the protection of witnesses at the pretrial stage of a criminal prosecution. The addition by Congress of § 1510, which served to specifically

define corruption of justice at the pretrial stage, does not serve to give any significant clarification to the meaning of "proceeding" other than in the context dealt with. The decisions of the Circuit are less vague. The courts are generally inclined to hold that agency investigative activities are § 1505 "proceedings." The government argues that § 1505 supplements the new provision, § 1510 by protecting against corruption at every stage. In this connection, we note that the District Director is authorized by regulation, 19 C.F.R. § 173.6 (1977), to conduct reviews of entries and submitted documents with a view to searching out and uncovering fraud. This process was carried out in the case at bar, and it led to a criminal indictment.

A strong authority dealing with the specific question whether a false invoice investigation is a "proceeding" is found in *United States v. Fruchtman,* 421 F.2d 1019 (6th Cir.), *cert. denied,* 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970). There a conviction under the statute with which we are here dealing, § 1505, was upheld. It was predicated on evidence similar to ours, the giving of false invoices to a F.T.C. investigator. The court ruled that the term "proceedings" was broad "encompassing both the investigative and adjudicative functions of a department or agency." 421 F.2d at 1021.

An Eighth Circuit decision in which there had been no formal complaint filed was *Rice v. United States,* 356 F.2d 709 (8th Cir. 1966). In that case a charge of violating § 1505 by intimidating witnesses in an NLRB investigation was upheld. The court noted that no formal complaint had been filed, but said that "proceedings" were not limited to "only those acts committed after a formal stage was reached." There had been, however, preliminary charges presented to the Board, and the filing of these gave notice to the subject of the charges and that there was a field investigation being made to determine whether or not the Board would file a complaint. The court said that these initiated the investigatory "proceedings." Similarly, in our case, the District Director of Customs conducted

an initial or preliminary evaluation proceeding which was a prelude to a criminal investigation.

The activities before the Customs Commission are not unlike those which are pursued by the Internal Revenue Service or the Immigration and Naturalization Service. In *United States v. Carzoli,* 447 F.2d 774 (7th Cir. 1971), *cert. denied,* 404 U.S. 1015, 92 S.Ct. 673, 30 L.Ed.2d 662 (1972), the Seventh Circuit upheld a conviction for obstructing an Internal Revenue Service investigation into possible criminal activity. This was under § 1510. The court noted that that statute was designed to protect potential witnesses.

Another case, one from the Ninth Circuit, *United States v. Vixie,* 532 F.2d 1277 (9th Cir. 1976), involved a fraudulent response to an I.R.S. subpoena which was issued in the course of administrative proceedings.

It is to be noted that 19 U.S.C. § 1509 provides for Customs officers to cite importers and others to appear to testify under oath regarding imported merchandise. These formal procedures are not reached in this investigation. At the same time, we do not see that the use of this machinery would have made the proceeding more like a "proceeding" simply by virtue of the issuing of a subpoena formally or the giving notice of a preliminary investigation.

*United States v. Batten,* 226 F.Supp. 492 (D.D.C.1964), *cert. denied,* 380 U.S. 912, 85 S.Ct. 898, 13 L.Ed.2d 799 (1965), involved an S.E.C. investigation which was determined to have been a "proceeding." However, the S.E.C. has more of a tribunal character than do many other administrative agencies.

One more comment: *Carzoli* and *Vixie* show that there is some overlap between § 1505 and § 1510, with § 1505 being recognized as having much more breadth applying as it does to the protection against corruption incident to the proper administration of the law.

In sum, the term "proceeding" is not, as one might be inclined to believe, limited to something in the nature of a trial. The growth and expansion of agency activities have resulted in a meaning being given to "proceeding" which is much more inclusive and which no longer limits itself to formal activities in a court of law. Rather, the investigation or search for the true facts such as that which is described in the indictment here is not to be ruled as a non-proceeding simply because it is preliminary to indictment and trial.

We conclude that it was error for the trial court to determine that the Customs officials were not involved in a proceeding and in concluding that Counts I and II should be dismissed.

■ We have also considered the trial court's conclusion that the indictment confused the identity of the two corporate defendants resulting in a lack of clarity as to which of them was charged with which conduct, and we have considered the trial court's ruling that Counts I and II were duplicitous since they alleged that there were several years of fraudulent conduct which is said to be irrelevant and prejudicial. We see no merit in either of these rulings.

■ The argument that the communications between accomplices cannot give rise to a violation is also lacking in merit.

■ We have considered the question whether the district court correctly ruled that under § 1505 the giving of advice or counsel by the defendant to give false answers to investigators is a violation of § 1505, and we differ with the trial court's conclusion that such an allegation is insufficient. The statute prohibits obstruction of proceedings "corruptly or by threats or force." The district court interpreted the statute too narrowly when it determined that only "evil means" such as coercion and intimidation of witnesses could constitute a violation. The authorities are to the contrary. They hold that advising or procuring false testimony or statements comes within the prohibition of the obstruction of justice statutes. *See United States v. Abrams,* 427 F.2d 86 (3d Cir.), *cert. denied,* 400 U.S. 832, 91 S.Ct. 64, 21 L.Ed.2d 63

(1970) (§ 1505); *Cole v. United States,* 329 F.2d 437 (9th Cir. 1964), *cert. denied,* 377 U.S. 954, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964) (§ 1503); *Stein v. United States,* 337 F.2d 14 (9th Cir. 1964). In *United States v. Henderson,* 386 F.Supp. 1048 (S.D.N.Y. 1974), the court said:

> Under sections 1503 and 1505 the word "corruptly" has been given a broad and all-inclusive meaning; both sections have been held to encompass obstruction in the absence of force or threats . . . 386 F.Supp. at 1055.

## II.

### DID THE TRIAL COURT ERR IN ITS HOLDING THAT COUNT II HAD TO BE DISMISSED BECAUSE OF DUPLICITY?

■ The basis for the court's decision that the count was duplicitous was that it alleged a violation of 18 U.S.C. § 542 based on the fact that there were 26 different occasions on which imported rifles came into the United States with false statements and invoices. Is this necessarily duplicitous? We hold that it is not. Merely because an indictment alleges several means of accomplishing a single offense, rather than two separate offenses, in a single count, does not necessarily mean that it is duplicitous. *United States v. Warner,* 428 F.2d 730 (8th Cir.), *cert. denied,* 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970); *Travis v. United States,* 247 F.2d 130 (10th Cir.), *rev'd on other grounds,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1957); 8 Moore's Federal Practice ¶ 8.03[2] (1977).

■ Does this allege several means of accomplishing a single offense? The government places reliance on the case of *United States v. Cohen,* 35 F.R.D. 227 (N.D. Cal.1964), *aff'd,* 378 F.2d 751 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). In *Cohen,* the defendant had been accused of transmitting interstate wagering information while in the business of wagering, contrary to 18 U.S.C. § 1084(a). The indictment alleged up to 12 calls by two bettors over a period of about three months. The court held that this could have been regarded as a continuing course of conduct which it was to the defendant's advantage to have treated as only one offense, and on that basis determined that it was not duplicitous.

Granted, the *Cohen* decision is somewhat different in that the issue was whether the accused was in the business of wagering and the course of conduct was therefore an element. In our case, § 542 prohibits false statements. Defendant cites and relies on *United States v. Tanner,* 471 F.2d 128 (7th Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972), wherein the court held duplicitous an indictment which charged the defendants with transportation of explosives in interstate commerce between Tennessee and "diverse other places" over a four-month period. These were different trips by different defendants carrying different carloads of dynamite and were held to not be part of a continuing scheme to transport explosives in the absence of a broadly defined allegation as to the scheme. *Id.* at 139.

Other cases illustrate the distinctions which have been drawn between allegations of multiple offenses and of multiple means of carrying out one offense. *See Gerberding v. United States,* 471 F.2d 55 (8th Cir. 1973) ("assaulting" and "putting in jeopardy" of victims in bank robbery only two means of committing one crime); *United States v. Warner,* 428 F.2d 730 (8th Cir.), *cert. denied,* 400 U.S. 930, 91 S.Ct. 194, 27 L.Ed.2d 191 (1970) (each count in indictment for aiding preparation of false tax return alleged several ways of committing a single misrepresentation on a single return—held not duplicitous; *Travis v. United States,* 247 F.2d 130 (10th Cir.), *rev'd on other grounds,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1957) (charge of stating falsely in affidavit that defendant was not a member of Communist party and that he was not affiliated therewith, stated two means of accomplishing one offense of false affidavit).

In our case, on each of the invoices, it is alleged that John Val Browning as an offi-

cer of the Browning Arms Company wrote to his Japanese manufacturer-seller, Miroku, and counseled that the invoices described in the indictment reflect the individual unit price or value less than the actual unit price or value of the merchandise. Accumulated documents, if shown by the evidence to establish falsity and fraud, would succeed in doing so by reason of the number of times that it was practiced. Conceivably, however, the trial court would wish to compel the government to elect as to one transaction and prove the others as similar offenses or perhaps some other procedure would be appropriate once the evidence is in. We are unable, however, to understand the necessity for dismissal of the indictment on this account. *See Reno v. United States,* 317 F.2d 499 (5th Cir. 1963); *United States v. Starks,* 515 F.2d 112 (3d Cir. 1975), *aff'd, Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); 8 Moore's Federal Practice ¶ 8.04 (1970); 1 Wright, Federal Practice and Procedure, § 145 (1969).

The trial court was concerned about the fact that the prosecutors stated in open court that the treating of this as one transaction rather than 26 was in the defendants' best interest. This does not call for a sanction against the government.

We have also examined 19 U.S.C. § 1603, stating that it is the duty of the appropriate Customs officer to report such seizure or violation to the United States Attorney for the district. It does not appear, however, that it was a seizure in this case and that this provision would come into play. The reaction of the trial court to this matter was not well founded.

Our conclusions on the dismissal of Count III are, first that it was error to dismiss the count because of the listing of each of the several invoices. We have appended Count III in order to show that some question exists as to whether it sets forth distinct transactions.

Secondly, whether this is duplicitous should be considered by the trial court in the light of the evidence. If the court so determines, it can require the prosecution to make an election as to the single transaction which he wishes to rely on. The remaining items can then be considered as similar offenses to prove the element of the offense or be stricken if not considered relevant. If it is established by the evidence that the 26 invoices evidence one connected series of transactions, the matter can be so considered.

We have not considered in connection with this case the further request of the government that the trial court be removed from continued presiding over this trial. If the government wishes to pursue this, it should present its request in a separate petition which details the grounds for the request.

### APPENDIX

### III.

The Grand Jury further charges that:

On or about the dates hereinafter specified, in the Eastern District of Missouri,

### BROWNING, INC.

### THE BROWNING ARMS COMPANY

### and JOHN VAL BROWNING,

The defendants herein, willfully and knowingly did enter and introduce and attempt to enter and introduce into the commerce of the United States, imported merchandise, that is, Browning BL–22, Grade I, .22 caliber rifles by means of false statements, false and fraudulent invoices, declarations, affidavits and certain other papers, to wit, Customs Warehouse Entries and Customs Consumption Entries, the said statements, invoices, declaration, affidavits and papers being hereinafter described by "Entry Number" and "Date of Entry," which said documents were false and fraudulent in that they did reflect as the invoice unit price and value of said merchandise a price and value which was less than the actual unit price or value of said merchandise, as the defendants then knew.

| Entry Number | Date of Entry |
| --- | --- |
| 105729 | April 15, 1971 |
| 106190 | May 11, 1971 |
| 106350 | May 19, 1971 |
| 106387 | May 20, 1971 |
| 106906 | June 16, 1971 |
| 100851 | August 24, 1971 |
| 101308 | September 22, 1971 |
| 101538 | October 5, 1971 |
| 102219 | November 15, 1971 |
| 102299 | November 18, 1971 |
| 102300 | November 18, 1971 |
| 102430 | November 29, 1971 |
| 105088 | April 5, 1972 |
| 105167 | April 7, 1972 |
| 105461 | April 24, 1972 |
| 105591 | April 27, 1972 |
| 105932 | May 15, 1972 |
| 106589 | June 19, 1972 |
| 106694 | June 23, 1972 |
| 100102 | July 10, 1972 |
| 100738 | August 9, 1972 |
| 100886 | August 16, 1972 |
| 101329 | September 12, 1972 |
| 102948 | October 25, 1972 |
| 102159 | November 1, 1972 |
| 102426 | November 15, 1972 |

In violation of Section 542, Title 18, United States Code.