**UNITED STATES of America**

v.

**Oliver L. NORTH.**

**Crim. No. 88–0080–02.**

United States District Court,
District of Columbia.

Nov. 10, 1988.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Re: *Defendant North's Motions (# 28) to Dismiss Count 14 for Failure to State an Offense; (# 31) to Dismiss Counts 5, 6, 7, and 15 on the Ground that They Allege Conduct Within the "Exculpatory No" Exception to 18 U.S.C. § 1001; (# 33) to Dismiss Count 15 for Failure to State an Offense; (# 36) to Dismiss Count 16 for Failure to State an Offense.*

Counts 14, 15, and 16 allege that North made false statements, falsified or removed government documents and otherwise obstructed President Reagan's investigation into his conduct at the National Security Council. He has moved to dismiss these counts for a variety of reasons in a series of motions, some of which also refer to similar events involving Congressional inquiries. For reasons set out below, dismissal of Counts 14, 15, and 16, charging violations of 18 U.S.C. § 1505, § 1001, and § 2071 is denied, and certain issues of more general application raised by the motions are rejected for all purposes.

President Reagan initiated an urgent preliminary inquiry into North's activities by directing the Attorney General to make a preliminary investigation of possible improprieties affecting the proper conduct of foreign affairs. Without admitting any corrupt conduct as alleged, North contends these three counts are legally insufficient for a variety of reasons.

The gist of North's motions to dismiss reveals a skewed attitude toward our form of constitutional government. He urges that no government official, including even the Attorney General when acting on behalf of the President, was authorized to ask him questions regarding his involvement in Iran–Contra matters occurring while he was employed at the President's National Security Council; that he had the absolute right to lie, to obstruct such inquiries, and to remove or destroy official NSC records because he had not been warned that if he did so he might be indicted. Reaching even further, he asks the Court to hold that the federal government can not function in harmony with its constitutional obligations if officials in positions of high responsibility like himself are required to be candid and truthful when dealing with each other in matters of grave consequence to the nation. Although he makes this argument most forcefully and explicitly with regard to Congressional inquiries, (Def.'s Motion # 34), its substance even pervades his motions to dismiss the counts relating to his conduct in the Presidential inquiry into his activities.

Ours is a country governed by the rule of law. There is nothing in the Constitution, federal statutes or applicable decisions which warrants this cynical approach. To merely state it provides the response. This Court must reject it totally.

Consider North's alleged behavior in the face of the Presidential inquiry. When it appeared that serious misconduct may have misdirected matters of the highest sensitivity being conducted from the White House by the National Security Council, the President of the United States initiated a preliminary inquiry. He had reason to believe that an urgent matter affecting the conduct of foreign policy might be involved. These concerns are among the President's primary responsibilities under the Constitution. Accordingly, on November 21, 1986, the President directed the Attorney General to find out what was taking place. Two days later, on Sunday, November 23, 1986, the Attorney General questioned North at the Department of Justice. As a Marine officer assigned to the President for work at the National Security Council, North was personally responsible for matters of solemn national importance, and was familiar with the matters under inquiry. As the Attorney General appropriately directed questions to him, North chose, counts 14 and 15 allege, to lie and affirmatively mislead in order to cover up matters material to the inquiry and his own participation in the events. Thus, he allegedly sought to deceive the President and to prevent disclosure of facts of profound national importance under National Security Decision Directive 159 and the President's Executive

Order 12333. If the allegations of the indictment are factually correct, North breached the high public duty with which he was entrusted.

The Court will not give judicial approval to the suggestion that he was free in these circumstances to place his personal interests or objections to national policy ahead of the public trust he had accepted. The very purpose 18 U.S.C. § 1001 is to protect the authorized functions of government from being perverted by those who make false, deceptive or fraudulent statements in government documents or to government officials. *United States v. Gilliland*, 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). Similarly, § 1505 criminalizes the deliberate frustrations of a department or agency's attempt to gather relevant evidence. *United States v. Alo*, 439 F.2d 751, 754 (2d Cir.) *cert. denied*, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971).

█ To bolster his distorted point of view, North contends that a jurisdictional requirement of Sections 1001 and 1505 is not met (# 28, # 33) because the inquiry did not take place within a "department or agency." Yet a Presidential investigation does fall squarely within both statutes. "Department" encompasses the "executive, legislative and judicial branches." *United States v. Bramblett*, 348 U.S. 503, 509, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955). The President and his delegated representative, the Attorney General, moreover, were apparently acting well within their assigned responsibilities. The President had a legal basis to request the information and the authority to act in various legally-significant ways on the information he received from the inquiry.[1] This is the essence of the jurisdictional requirement of the statutes. *United States v. Rodgers*, 466 U.S. 475, 481, 104 S.Ct. 1942, 1947, 80 L.Ed.2d 492 (1984). *See also, United States v. Browning*, 572 F.2d 720, 722–25 (10th Cir. 1978), *cert. denied*, 439 U.S. 822, 99 S.Ct. 88, 58 L.Ed.2d 114. When Congress enact-

ed Sections 1001 and 1505, it was particularly concerned about false statements and obstruction of the day-to-day administration of laws and regulations, but surely it did not intend to exonerate the more culpable offenders of these precepts—those who in exigent circumstances lied to obstruct a Presidential inquiry into conduct suspected to offend both statutes and policy.

█ North also objects on the ground that the Attorney General's investigation was not sufficiently formal. He argues that he was not subpoenaed or put under oath; that the President had not promulgated rules for inquiring into his behavior, and the Attorney General did not transcribe his statements verbatim. These all lack any legal support. It is true that Sections 1001 and 1505 do not sweep within their ambit every passing statement made by one government official to another government official, and the formality of the proceeding may be one indication of whether a proceeding or investigation within the reach of the statute is taking place. However, formality in this context cannot be measured by the standards of a trial. *United States v. Browning*, 572 F.2d at 724. North was apparently summoned on a Sunday by the Attorney General himself to the Department of Justice in the face of rising, well-publicized public concern. Here, then, was a proceeding clearly conducted in an atmosphere of gravity to which a reasonable person could not have assumed lacked legal consequences. *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir.), *cert. denied*, 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970). *See also, Marzani v. United States*, 168 F.2d 133, 137–138, 141–142 (D.C.Cir.), *aff'd by an equally divided Court*, 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431 (1948). The law is also well established that an oath was not necessary to trigger the charges. *United States v. Isaacs*, 493 F.2d 1124, 1156–1157 (7th Cir.1974), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146, *reh. denied*, 418 U.S. 955, 94 S.Ct. 3234, 41 L.Ed.2d

---

1. The defendant asserts that the Attorney General was acting outside the scope of his authority in conducting this inquiry. This is clearly wrong. The President may of course use proper delegates to conduct his urgent investigations, and the Attorney General, as the nation's highest law-enforcement official, is a proper delegate.

1178; *United States v. Adler,* 380 F.2d 917, 922 (2d Cir.1967), *cert. denied,* 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602. And surely a President does not need to promulgate regulations before undertaking a preliminary inquiry into an unexpected breaking foreign policy crisis in his administration.

The Government will need only to prove at trial that the specific questions posed to North by the Attorney General were precise and material to this legitimate Presidential inquiry, and that North actually made the false and obstructive statements knowingly and willfully under the circumstances outlined.

■ Nor should North be legally exonerated as he suggests because he was not put on notice that criminal statutes long in effect would be applied to him if he acted corruptly as alleged. Ignoring the case-by-case manner in which law develops, North argues that no one in his particular situation has been prosecuted for these crimes before, but he cites no one in similar circumstances. Certainly he gains no special status under the law because he held a high office of public trust or because he knew top secrets. He has only the rights of an ordinary citizen.

Contrary to his advocates' protestations in Motions # 28, # 33 and # 36, North did in fact have fair warning that mendacity and obstruction, coupled with destruction of official documents, was illegal. Prior Supreme Court cases told him that the Court interpreted "department or agency" broadly, *Bramblett,* 348 U.S. 503, 75 S.Ct. 504; *Gilliland,* 312 U.S. 86, 61 S.Ct. 518, and within the two years preceding his meeting with the Attorney General, at least one highly publicized case from this Circuit upheld the indictment of another executive branch official who lied about activities related to her official duties under Sections 1001 and 1505. *United States v. Lavelle,* 751 F.2d 1266 (D.C.Cir.), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985). Surely it would come as no surprise to an ordinary citizen, to quote the false statement statute, that it was illegal if one,

... in any matter within the jurisdiction of any department or agency ... knowingly and willfully falsifies, conceals, or covers up ... or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry ... 18 U.S.C. § 1001.

Nor would it surprise an ordinary citizen that obstructing official inquiries and investigations is illegal. To quote the statute at issue in Count 14:

Whoever corruptly ... influences, obstructs, or impedes or endeavors to influence, obstruct or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any investigation is being had by either House, or any committee of either House—

Shall be fined ... or imprisoned ...

18 U.S.C. § 1505.

North also had fair notice that his conduct could fall within the scope of Section 2071[2]. It likewise contains no exception for National Security Council documents, and the National Security Council in its 1984 Administrative Manual warns that, by law, the originals of an array of National Security documents must be included either

---

**2.** 18 U.S.C. § 2071 provides:

(a) Whoever willfully and unlawfully conceals, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, paper, document, or other thing filed or deposited ... or in any public office, or with any judicial or public officer of the United States, shall be fined not more than $2,000 or imprisoned not more than three years, or both.

(b) Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, willfully and unlawfully conceals, removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States.

in the NSC institutional records or Presidential records.[3] The manual as well as the nature of documents themselves serve as notice to North that such papers should not be destroyed. North protests that he cannot distinguish the regular shredding of documents from illegal conduct under § 2071. Regular shredding differs from the conduct alleged here in that it lacks criminal intent.

■■■ Finally, North urges in Motions # 28 and # 33 that lenity be applied, but the rule pertains only where a statute is ambiguous. *United States v. Rodgers*, 466 U.S. 475, 484, 104 S.Ct. 1942, 1948, 80 L.Ed. 2d 492 (1984). The statutes previously quoted outlawing obstruction, false statements and destruction of documents are not ambiguous.

Closely related to his plea for leniency is North's insistence that he receive the benefits of the so-called "exculpatory no" doctrine and thus be judicially excused from responding to the allegations against him. (Defendant's Motion # 31). Again he fails to appreciate the gravity of his alleged conduct. This Circuit has not adopted the doctrine, but in any event it is not applicable here. Even the few Circuits that have mentioned it limit it by requiring factors not shown to be present here. The defense is unavailing if the false "no" would impair the basic function of the requesting agency —here, the President himself. *United States v. Bedore*, 455 F.2d 1109, 1111 (9th Cir.1972). Moreover, according to the indictment North embroidered his "no" responses to affirmatively mislead. Thus he misdirected the inquiry, something far different from a denial of a single fact in a conversation. *United States v. Capo*, 791 F.2d 1054, 1069 (2d Cir.1986); *United States v. Olsowy*, 836 F.2d 439, 441–442 (9th Cir.1987, amended, 1988), *cert. denied*, —— U.S. ——, 108 S.Ct. 1299, 99 L.Ed.2d 509. Moreover, just as private persons cannot claim the "exculpatory no" doctrine in a claim against the government, government officials cannot claim its protection in seeking to maintain their positions—something North was arguably attempting to do here, as he was in fact removed from the White House two days after his November 23 interview. *See, Paternostro v. United States*, 311 F.2d 298, 305 (5th Cir.1962); *Marzani v. United States*, 168 F.2d 133 (D.C.Cir.), *aff'd by an equally divided court*, 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431 (1948).

Under no circumstances will this Court apply the "exculpatory no" doctrine to these or similar circumstances. The Attorney General's questions on behalf of the President were posed in a legitimate, authorized proceeding within the compass of 18 U.S.C. § 1001 and § 1505, and North must stand trial on Counts 14, 15 and 16.

To the extent that North advances comparable arguments to those addressed in this Memorandum regarding other counts,

---

**3.** North also argues that he could conceal, remove or destroy NSC documents because they were not publicly-created or publicly-available documents. This is a misreading of the phrase "public document," as courts have construed § 2071 and its predecessors. *United States v. De Groat*, 30 F. 764 (E.D.Mich.1887) ("The essential element of the offense is the specific intent to destroy them *as records* of a public office; or in other words, to obliterate or conceal them as the evidence of that which constitutes their value as public records, or to destroy or impair their legal effect or usefulness as a record of our governmental affairs, be that effect or usefulness what it may."). Section 2071 seeks to prevent the kind of activity which is alleged to have occurred.

Congress had previously protected Presidential records, 44 U.S.C. §§ 2201–2207, so

North's disingenuous argument that "Presidential" material is exempt is also unavailing, even if these materials are somehow "Presidential," a fact not yet apparent. Certainly there is no corollary of the executive privilege doctrine providing North constitutional protection for destruction of documents, as he asserts.

Finally, North's challenge that the indictment did not properly allege that he was the custodian of the records is meritless. The indictment says North, "having custody" of the records, unlawfully falsified and destroyed them. That is sufficient. North's position at NSC need not have been as "Document Keeper" for him to have had legal custody of records. In fact, his discovery requests seeking 80 boxes of documents from his own office suggest that he had custody of numerous important documents.

it will be unnecessary to retravel this ground.

SO ORDERED.